APPEAL NUMBER 12-2548

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellant

v.

HARRY KATZIN, et al.,
Appellees

BRIEF ON REHEARING *EN BANC* FOR *AMICI CURIAE*
Federal Public and Community Defender Organizations of the Third Circuit
in Support of Appellees and Affirmance

Appeal From an Order Suppressing Evidence in Criminal Number 11-226
in the United States District Court for the Eastern District of Pennsylvania

EDSON A. BOSTIC
Federal Public Defender
District of Delaware

RICHARD COUGHLIN
Federal Public Defender
District of New Jersey

LEIGH M. SKIPPER
Federal Community Defender
Eastern District of Pennsylvania

JAMES V. WADE
Federal Public Defender
Middle District of Pennsylvania

LISA B. FREELAND
Federal Public Defender
Western District of Pennsylvania

BRETT G. SWEITZER
Assistant Federal Defender
Chief of Appeals
*Counsel of Record*

Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 540 West - Curtis Center
601 Walnut Street
Philadelphia, PA  19106
(215) 928-1100

OMODARE JUPITER
Federal Public Defender
District of Virgin Islands

# **TABLE OF CONTENTS**

**PAGE**

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Interest of *Amici Curiae*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    *Davis* provides the rule of decision.. . . . . . . . . . . . . . . . . . . . . . . . 3

        1.    *Davis* did not leave open the question of reliance on non-binding precedent.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        2.    The government's approach would supplant existing exclusionary-rule standards with case-by-case deterrence and cost/benefit determinations.. . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.    *Herring*'s principles compel suppression even if *Davis* were not governing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Certificate of Bar Membership

Certification

Certificate of Service

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                           **PAGE**

*Arizona v. Evans*, 514 U.S. 1 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Davis v. United States*, 131 S. Ct. 2419 (2011). . . . . . . . . . . . . . . . 2, 3, 5, 6, 10, 11

*Herring v. United States*, 555 U.S. 135 (2009). . . . . . . . . . . . . . . . . . . . . . . . . 2, 5

*IFC Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298
    (3d Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Illinois v. Krull*, 480 U.S. 340 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re McDonald*, 205 F.3d 606 (3d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Messerschmidt v. Millender*, 132 S. Ct. 1235 (2012). . . . . . . . . . . . . . . . . . . . . 11

*Murray v. United States*, 487 U.S. 533 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Nix v. Williams*, 467 U.S. 431 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013). . . . . . . . . . . . . . . . . . . . 7

*United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007). . . . . . . . . . . . . . . . . . . . 9

*United States v. Jones*, 132 S. Ct. 945 (2012)      . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Knotts*, 460 U.S. 276 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Leon*, 468 U.S. 897 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*United States v. Marquez*, 605 F.3d 604 (8th Cir. 2010). . . . . . . . . . . . . . . . . . 9

*United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010). . . . . . . . . . . . . . 8, 9, 10

## <u>TABLE OF AUTHORITIES CONTINUED</u>

**PAGE**

*United States v. McIver*, 186 F.3d 1119 (9th Cir. 1999).. . . . . . . . . . . . . . . . . . . . 9

*United States v. Vasquez de Reyes*, 149 F.3d 192 (3d Cir. 1998).. . . . . . . . . . . . . 7

**FEDERAL STATUTES**                                                    **PAGE**

18 U.S.C. § 3006A.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**OTHER AUTHORITIES**                                                   **PAGE**

Ruggero J. Aldisert, *The Judicial Process* (1976). . . . . . . . . . . . . . . . . . . . . . . . . 5

# INTEREST OF *AMICI CURIAE*

The Federal Public and Community Defender organizations for the judicial districts in the Third Circuit represent indigent defendants in federal court in each organization's respective district, and in the U.S. Court of Appeals for the Third Circuit, pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.  As the institutional defenders, these organizations have a unique interest and expertise in all areas of federal criminal law, and a systemic perspective to offer the Court on issues pertaining to the Fourth Amendment and the exclusionary rule.  *Amici* Defender organizations are intimately familiar with the issues before the *en banc* Court in this case, and have litigated similar issues in cases previously before the Court.[1]

---

[1]    *Amici* state that no party's counsel authored this brief in whole or in part, and that no party or person other than *amici* and their members contributed money towards the preparation or filing of this brief.

1

## **ARGUMENT**

The Court has ordered rehearing *en banc* in part to address whether the "good-faith exception" to the exclusionary rule prevents suppression of evidence in this case.  The Court should adhere to the panel majority's conclusion that the good-faith exception does not apply.

Appellees have demonstrated why *Davis v. United States*, 131 S. Ct. 2419 (2011) and the Supreme Court's other good-faith decisions compel suppression here, and why recent appellate authority sheds almost no light on the propriety of suppression in circuits—including the Third—that lacked binding precedent on the substantive Fourth-Amendment issue.  *Amici* concur.

We write to articulate two additional points.  First, *Davis* provides the rule of decision.  The government and the panel dissent largely bypass *Davis*, relying instead on general exclusionary-rule principles set forth in *Herring v. United States*, 555 U.S. 135 (2009).[2]  That approach is wrong.  *Davis* sets forth the good-

---

[2]    *See, e.g.*, Pet. for Rehearing at 4 ("This case presents a question left open by *Davis*, but it is resolved by the basic purposes and limitations of the exclusionary rule as articulated in *Herring* and *Davis*."); *United States v. Katzin*, No. 12-2548, *dissent op.* at 16 (Van Antwerpen, J., dissenting in part) ("All in all, my problem with the method of the majority's good-faith analysis is that it myopically focuses too much on the facts and narrow holdings of *Davis* and other good-faith cases, and considers too little, if at all, the reasoning and principles of law underlying those decisions.").

2

faith standard for all cases in which police rely on decisional law, and it compels suppression here. *Herring*'s deterrence and cost/benefit analysis is a tool for determining whether the good-faith exception applies in new contexts; it is not a rule of decision employed to erode established exclusionary-rule standards, like the one announced in *Davis*.

Second, even if *Davis* were not governing, suppression would be appropriate because law enforcement exhibited reckless or grossly negligent disregard for Fourth Amendment rights, rendering their conduct deterrable and suppression warranted. The government portrays itself as having complied with the uniform guidance of other courts of appeals and the Supreme Court, only to be blind-sided by *United States v. Jones*, 132 S. Ct. 945 (2012). The reality is less flattering. When law enforcement acted here, only four circuits had opined on warrantless GPS tracking—with this Court silent and with the most recent decision holding the practice unconstitutional. The government therefore had clear notice of the unsettled legal landscape, yet affirmatively instructed its agents *not* to seek a warrant.

### A.    *Davis* **provides the rule of decision.**

*Davis* "hold[s] that searches conducted in objectively reasonable reliance on binding appellate precedent are not subject to the exclusionary rule." 131 S. Ct. at

3

2423-24.  Key to its holding was law enforcement's "strict compliance" with "then-binding circuit law," because compliance with "binding appellate precedent specifically *authoriz[ing]* a particular police practice" is not culpable and ought not be deterred.  *Id.* at 2428, 2429.

The government recognizes that it loses if *Davis* governs, and therefore asks the Court to conduct a new deterrence and cost/benefit analysis from scratch.  *See* Pet. for Rehearing at 4-5, 10-12.  That would be improper.  *Davis* did not leave open the question of reliance on non-binding precedent, and the government's approach would jettison all existing exclusionary-rule standards—whether for inevitable discovery, independent source, attenuation, or good-faith reliance—in favor of an untethered *Herring* analysis conducted *ad hoc*, case by case.

> ### 1.   *Davis* did not leave open the question of reliance on non-binding precedent.

In addition to carefully circumscribing its holding, the *Davis* Court affirmatively explained that the exclusionary rule will continue to operate in circuits lacking binding precedent:

> [A]pplying the good-faith exception in this context will not prevent judicial reconsideration of prior Fourth Amendment precedents. * * * [D]efendants in jurisdictions in which [a particular Fourth Amendment] question remains open will still have an undiminished incentive [of suppression] to litigate the issue.

4

131 S. Ct. at 2433.  Thus, it is simply not true that "*Davis* just happened to involve a situation of binding appellate precedent," as the government has argued—*Davis* sets forth the good-faith standard for all cases involving reliance on decisional law.  Gov't Panel Br. at 59.  That dooms the government's position at the outset.[3]

A similar dispute over the scope of prior good-faith precedent arose in *Herring* itself.  *Herring* extended to police databases the Court's previous holding in *Arizona v. Evans*, 514 U.S. 1 (1995) that the exclusionary rule does not apply when police reasonably rely on errors in a court database—much as the government argues that *Davis* should be extended to non-binding precedent.  In responding to the dissent's argument that the police/court distinction was crucial to *Evans*'s holding, the *Herring* majority examined how *Evans* treated the issue.  Because *Evans* "expressly and carefully [left the question of] police error unresolved," the police/court distinction was not crucial to its holding.  555 U.S. at

---

[3]     The panel dissent dismissed the above-quoted statement in *Davis* as "pure *dicta*." *Katzin*, *dissent op.* at 13.  That is not a fair reading.  The Court's acknowledgment that the exclusionary rule will continue to operate in jurisdictions lacking binding precedent was integral to its prudential analysis of whether the rule is needed in jurisdictions where police act in accordance with binding precedent.  It is therefore part of the *ratio decidendi*, not mere *dicta*.  *See, e.g.*, Ruggero J. Aldisert, *The Judicial Process* 798-801 (1976).  In any event, this Court "pay[s] due homage to the Supreme Court's well-considered *dicta* as [lighthouses] that guide [this Court's] rulings."  *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 311 (3d Cir. 2006).  *See also In re McDonald*, 205 F.3d 606, 612 (3d Cir. 2000)*.*

5

142-43 & n.3 (citing *Evans*, 514 U.S. at 16 n.5).

The opposite is true here:  *Davis* did not leave the question open; it expressly and carefully explained that the exclusionary rule will continue to operate in jurisdictions lacking binding precedent.  131 S. Ct. at 2433.  The binding/non-binding distinction was therefore crucial to the reasoning and limited holding of *Davis*, and should not be disregarded.  As the Supreme Court made clear in its foundational good-faith case, pruning the exclusionary rule is not a job for the lower courts:

> [T]he Court of Appeals understandably declined to adopt a modification of the Fourth Amendment exclusionary rule that this Court had not previously sanctioned.  Although the modification finds strong support in our previous cases, the Court of Appeals' commendable self-restraint is not to be criticized.

*United States v. Leon*, 468 U.S. 897, 926 (1984).

> ## 2.    The government's approach would supplant existing exclusionary-rule standards with case-by-case deterrence and cost/benefit determinations.

Aside from thwarting *Davis* itself, the government's approach would erode well-established standards governing other exceptions to the exclusionary rule.  If the standard for good-faith reliance on decisional law is open to a new deterrence and cost/benefit analysis in every case, then why not the other standards?  The Court can expect government arguments that *Leon* "just happened to involve" a

6

borderline case of probable cause;[4] that *Krull* "just happened to involve" a statute

rather than an administrative regulation or a departmental policy;[5] that *Nix* "just

happened to involve" inevitable, rather than mere probable, discovery;[6] that

*Murray* "just happened to involve" a warrant request completely unprompted by

an illegal search, rather than only partially prompted thereby;[7] and so on.  The

government might marshal a generalized deterrence and cost/benefit argument

disfavoring suppression under any of these eroded standards, but lower courts'

entertainment of such arguments can lead only to doctrinal chaos.

Of course, exclusionary-rule exceptions are *applied* case by case, often in

fact-sensitive analyses.  But that does not mean the scope of each exception is

open to redefinition in every case, which is the government's proffered regime.

---

[4]    *See Leon*, 468 U.S. at 926 (exclusionary rule does not apply when police rely on warrant not clearly lacking in probable cause).

[5]    *See Illinois v. Krull*, 480 U.S. 340, 356 (1987) (exclusionary rule does not apply when police rely on later-invalidated statute).

[6]    *See Nix v. Williams*, 467 U.S. 431, 449-50 (1984) (exclusionary rule does not apply when police would have inevitably discovered evidence by lawful means).  *See also United States v. Vasquez de Reyes*, 149 F.3d 192, 195-96 (3d Cir. 1998) (emphasizing need for non-speculative showing of inevitable discovery).

[7]    *See Murray v. United States*, 487 U.S. 533, 542-43 (1988) (exclusionary rule does not apply when police discover evidence through independent source, *e.g.*, a warrant sought for independent reasons).

Thus, here, it would be legitimate (though incorrect) for the Court to deny

suppression by concluding that *United States v. Knotts*, 460 U.S. 276 (1983) is

binding precedent authorizing the agents' conduct.  *See United States v. Aguiar*,

737 F.3d 251, 261-62 (2d Cir. 2013) (so holding).  That would be an *application*

of the standard set forth in *Davis*.  It would not be legitimate, however, for the

Court to redefine the *Davis* standard, conducting the deterrence and cost/benefit

analysis anew, when it becomes apparent that the government cannot satisfy

*Davis*.  Only the Supreme Court may do that, and it is unlikely to given *Davis*'s

express and careful explanation that the exclusionary rule will continue to operate

in jurisdictions lacking binding precedent.

## B.    *Herring*'s principles compel suppression even if *Davis* were not governing.

Even if the Court were to indulge a new deterrence and cost/benefit analysis

here, suppression would still be warranted because law enforcement exhibited

reckless or grossly negligent disregard for Fourth Amendment rights.  The simple

truth is that an Assistant United States Attorney affirmatively instructed agents *not*

to seek a warrant in this case at a time when the federal appellate courts were split

3-1 on the constitutionality of warrantless GPS tracking, with no guidance from

this Court and with the most recent decision—*United States v. Maynard*, 615 F.3d

8

544 (D.C. Cir. 2010)—holding the practice unconstitutional.[8]  Such conduct is

deterrable and warrants suppression.

The government obscures the analysis by claiming that *Maynard* did not

give ample notice that the conduct here might be unconstitutional, and by

attempting to insulate the conduct as approved by a prosecutor.  *See* Gov't Panel

Br. at 52-57.  Thus, according to the government, the front-line agents were

blameless and the crucial development for good-faith purposes is *Jones* itself,

which was decided after the conduct here and announced a "radical shift in Fourth

Amendment law" that neither agents nor prosecutors "could have anticipated."  *Id.*

at 53, 55.  The government's analysis is deeply flawed.

First, *Maynard* gave more than ample notice of the unsettled legal

landscape.  The government distinguishes *Maynard* as utilizing the reasonable-

expectation-of-privacy test (as opposed to the *Jones* trespass test), and as

involving twenty-eight days of tracking (as opposed to two days, here).  Pet. for

Rehearing at 7; Gov't Panel Br. at 52-55.  "Thus," according to the government,

"even if *Maynard* had been the majority view, it would not have dictated that the

---

[8]     *Compare United States v. McIver*, 186 F.3d 1119, 1126-27 (9th Cir. 1999) (warrantless GPS tracking not a search); *United States v. Garcia*, 474 F.3d 994, 997-98 (7th Cir. 2007) (same); *United States v. Marquez*, 605 F.3d 604, 609-10 (8th Cir. 2010) (GPS tracking a search, but requires only reasonable suspicion) *with Maynard*, 615 F.3d at 555-56 (warrantless GPS tracking unconstitutional).

short-term monitoring [here] was a Fourth Amendment violation." Gov't Panel Br. at 53. But *Maynard* need not have conclusively dictated a particular result here in order to alert the government that the reasonable course was to seek a warrant. The good-faith exception is designed to protect not those who toe the constitutional line, but those who are "not culpable in any way." *Davis*, 131 S. Ct. at 2428.[9]

In any event, by its terms *Maynard* strongly counseled seeking a warrant here. The D.C. Circuit identified two types of tracking: one-time tracking "from one place to another" (as in *Knotts*), and what the court variously referred to as "twenty-four hour surveillance" and "prolonged surveillance." 615 F.3d at 556, 558. The court held the latter a search, reasoning that a person does not expose to the public his aggregate movements over significant time, because the likelihood of a stranger observing such movements is "essentially nil." *Id.* at 558-63. Importantly, the court explained that continuous human surveillance for even *one week* is implausible. *Id.* at 565.

---

[9]    Thus, the government's protestation that the agents lacked specific intent to violate the Fourth Amendment misses the mark. *See* Gov't Panel Reply at 14 (arguing that agents "did not act with any purpose to violate the defendants' rights"); *id.* at 15 n.7 ("[T]he question here is whether the agents acted with a bad purpose . . . .").

Four months after *Maynard* was decided, law enforcement agents asked a federal prosecutor if they should seek a warrant in order to attach to Harry Katzin's van a GPS tracker "in which the battery was [] expected to last for a week"—the exact time frame discussed in *Maynard*. Pet. for Rehearing at 7. The answer was "no," and the agents proceeded accordingly. The government's decision was reckless (or grossly negligent) in light of *Maynard*.[10] The fact that *Maynard* utilized the reasonable-expectation-of-privacy test, and that *Jones*'s later revival of the trespass test was surprising, are beside the point. When law enforcement acted here, they knew that the D.C. Circuit had recently held warrantless GPS tracking unconstitutional under reasoning squarely applicable to their proposed course of conduct.

Second, the prosecutor's involvement is, if anything, an aggravating rather than mitigating circumstance. The prosecutor is even more chargeable with

---

[10]    The government and the panel dissent argue that the week-long battery life of the GPS tracker is irrelevant to the analysis because the surveillance lasted only two days. Pet. for Rehearing at 7 n.3; *Katzin*, *dissent op.* at 49 n.25. That confuses the substantive Fourth Amendment issue and the separate question of good faith. Of course the substantive issue turns on "what actually happened, not on what potentially could have happened," Pet. for Rehearing at 7 n.3, but good faith turns on the state of affairs *at the time law enforcement acted*. *See, e.g.*, *Davis*, 131 S. Ct. at 2428 (police acted in good faith because, "at the time of the search," binding precedent approved conduct). When agents acted here, they expected the GPS tracker to last for a week (or longer if the battery were surreptitiously replaced).

11

knowledge of the unsettled legal landscape than are the agents, and his or her

conduct was equally reckless and is equally deterrable.  Unlike in *Messerschmidt*

*v. Millender*, 132 S. Ct. 1235 (2012), where the Court found prosecutorial

approval of a probable-cause affidavit relevant to the reasonableness of officers'

reliance on the resulting warrant, the prosecutor here instructed agents not to seek

a warrant at all, in the face of a circuit split and no guidance from this Court.  To

credit such conduct is, effectively, to anoint the prosecutor a judge—something no

one in our system of justice should condone.

Respectfully submitted,

/s/ Brett G. Sweitzer

| | |
|---|---|
| EDSON A. BOSTIC<br>Federal Public Defender<br>District of Delaware | BRETT G. SWEITZER<br>Assistant Federal Defender<br>Chief of Appeals<br>*Counsel of Record* |
| RICHARD COUGHLIN<br>Federal Public Defender<br>District of New Jersey | Federal Community Defender Office<br>for the Eastern District of Pennsylvania<br>Suite 540 West - Curtis Center |
| LEIGH M. SKIPPER<br>Federal Community Defender<br>Eastern District of Pennsylvania | 601 Walnut Street<br>Philadelphia, PA  19106<br>(215) 928-1100 |
| JAMES V. WADE<br>Federal Public Defender<br>Middle District of Pennsylvania | |
| LISA B. FREELAND<br>Federal Public Defender<br>Western District of Pennsylvania | OMODARE JUPITER<br>Federal Public Defender<br>District of Virgin Islands |

12

## <u>CERTIFICATE OF BAR MEMBERSHIP</u>

It is hereby certified that Brett G. Sweitzer is a member of the bar of the

Court of Appeals for the Third Circuit.


           /s/ Brett G. Sweitzer
           BRETT G. SWEITZER

DATE:   April 22, 2014

## **CERTIFICATION**

I, Brett G. Sweitzer, Assistant Federal Defender, Chief of Appeals, Federal

Community Defender Office for the Eastern District of Pennsylvania, hereby

certify that the electronic version of the attached brief was automatically scanned

by Symantec Endpoint Protection, version 12.1, and found to contain no known

viruses.  I further certify that the text in the electronic copy of the brief is identical

to the text in the paper copies of the brief filed with the Court.


 /s/ Brett G. Sweitzer
BRETT G. SWEITZER

DATE:   April 22, 2014

## <u>CERTIFICATE OF SERVICE</u>

I, Brett G. Sweitzer, Assistant Federal Defender, Chief of Appeals, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have filed this same day, both in electronic and paper form, the *Brief on Rehearing En Banc for Amici Curiae* and served copies upon Filing User Robert A. Zauzmer, Assistant United States Attorney, Chief of Appeals, and counsel of record for each appellee, through the Third Circuit Court of Appeals' Electronic Case Filing (CM/ECF) system.


/s/ Brett G. Sweitzer
BRETT G. SWEITZER

DATE:   April 22, 2014